UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMAR DAVON OLIVER,

               Petitioner,

v.

MATT MACAULEY,

               Respondent.

_____/

Case No. 1:21-cv-406

Hon. Jane M. Beckering

**OPINION**

Jamar Devon Oliver has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons discussed below, the petition will be dismissed.

    **I.**       **Background**

    **A.**       **Conviction and sentence**

The Michigan Court of Appeals summarized Oliver's criminal conduct as follows:

> Ashley Austin testified that she and defendant began dating in August 2015. Sometime before September 4, 2016, Austin falsely told defendant that she was moving to Georgia. On September 4, 2016, Austin went to defendant's mother's home to say a final goodbye to defendant because she wanted to discontinue contact with him. Austin and defendant watched television, had dinner, and had consensual sexual intercourse. Austin testified that the next morning, defendant became angry and held her against her will, sexually assaulted her several times, and thwarted her attempts to escape by hitting, kicking, and choking her and saying, "b*tch, you're not going anywhere[.]" Defendant was charged, in addition to the offenses of which he was convicted, with four counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)[.]

*People v. Oliver*, No. 339826, 2018 WL 2324104 at *1 (Mich. App. May 22, 2018) (footnote omitted).

1

On June 23, 2017, a jury acquitted Oliver of the four counts of CSC-I, and convicted him of one count of unlawful imprisonment, M.C.L. § 750.349b(1) and one count of assault by strangulation, M.C.L. § 750.84(1)(b). *Oliver*, 2018 WL 2324104 at *1; Trial Trans. (ECF No. 11-6, PageID.566). On August 2, 2017, Ingham County Circuit Court Judge Aquilina (the "trial judge") sentenced Oliver as a third-offense habitual offender, M.C.L. § 769.11, to concurrent terms of imprisonment of 12 to 30 years for unlawful imprisonment and 12 to 20 years for assault by strangulation. *Oliver*, 2018 WL 2324104 at *1; Judgment (ECF No. 11-12, PageID.638).

### B.    State court appeal

Oliver, through appellate counsel, raised two issues on his direct appeal:

I.  Whether the trial judge erred in not granting a directed verdict on the charge of unlawful imprisonment based on testimony of the complainant that she had opportunities to leave the house more than once such that no rational trier of fact could find defendant guilty beyond a reasonable doubt on that count.

II.  Whether the judge erred in scoring 50 points under OV 7 for excessive brutality during the commission of the two convictions and a remand for resentencing for one of the two based on the corrected range of 34-100 months is required. Even without the correction the judge exceeded the guidelines on the assault conviction by 30 months without making any findings to support the upward departure.

*Oliver,* No. 339826 (Defendant's Amended Brief on Appeal) (ECF No. 11-12, PageID.695).

Oliver also filed a *pro se* Standard 4 Brief raising three issues (in his words):

I.  Was there sufficient evidence to support all the elements of the charged crime of unlawful imprisonment?

The prosecutor failed to introduce sufficient evidence to support all the elements of the charged crime of unlawful imprisonment. In particular, the prosecution failed to prove that Mr. Oliver restrained Ms. Austin to facilitate the commission of another felony (assault by strangulation) or to facilitate flight after commission of another felony, therefore violating his due process. (ECF No. 11-12, PageID.720-721)

II.  Did the Court abuse its discretion when it allowed the testimony of the S.A.N.E. [Sexual Assault Nurse Examiner] nurse without the full disclosure of her credentials qualifying her as an expert on strangulation?

The court abused its discretion when it allowed the testimony of the S.A.N.E. nurse without the full disclosure of her credentials to qualify her as an expert on strangulation, therefore violating the due process of Mr. Oliver. (ECF No. 11-12, PageID.720, 725).

III.  Did the Court err and abuse its discretion when it allowed OV7 to stand on Mr. Oliver's Sentencing Guideline?

The court erred and abused its discretion when it allowed the implementation of OV 7, 50 points, to be added to Mr. Oliver's sentencing guideline score, therefore sentencing him to a disproportionate time. (ECF No. 11-12, PageID.720, 726).

The Michigan Court of Appeals affirmed the conviction.  *Oliver*, No. 339826, 2018 WL 2324104.

Oliver filed a *pro se* application for leave to appeal to the Michigan Supreme Court, raising the three issues set forth in his Standard 4 Brief (in his words):

I. The prosecutor failed to introduce sufficient evidence to support all the elements of the charge crime of unlawful imprisonment. In particular, the prosecutor failed to prove that Mr. Oliver restrained Ms. Austin to facilitate the commission of another felony or to facilitate flight after the commission of another felony. Therefore violating his due process.

II.  The court abused its discretion when it allowed the testimony of the S.A.N.E. nurse without the full disclosure of her credentials to qualify her as an expert on strangulation, therefore violating the due process of Mr. Oliver.

III. The court abused its discretion when it allowed the implementation of OV 7, 50 points, to be added to Mr. Oliver's sentencing guideline score. Therefore, sentencing him to a disproportionate time.

Application for leave (ECF No. 11-14, PageID.949-951).  The Michigan Supreme Court denied the application. *People v. Oliver*, No. 158091 (Mich.) (Dec. 21, 2018) (ECF No. 11-14, PageID.947).  Oliver did not appeal this decision to the United States Supreme Court.

## C.    Motion for relief from judgment

On October 4, 2019, Oliver filed a *pro se* motion for relief from judgment (MRJ) pursuant to MCR 6.502.  *See* MRJ (ECF No. 11-8).  Oliver raised a number of arguments in paragraphs 3, 4 and 5 of his MRJ (in his words):

3

3. From an examination of the record, it is apparent that trial counsel was constitutionally ineffective in the following ways:

A. Trial Counsel failed to adequately investigate (1) failed to request the curriculum vitae (CV) of an expert witness and failed to have an expert testify for the defense. (2) failed to investigate, question and subpoena EMT medics/ER doctors who could have provided corroborating testimony. (T.T. 6/20/17 pg. 48). (Argument I - *Brief in Support of Motion for Relief from Judgment*)

B. Counsel failed to investigate, obtain and use at trial undisclosed medical records of the alleged victim. (T.T., 6/20/17 pg. 202-203) (1) counsel was ineffective for failing to address the Court about the failure of the prosecution to disclose exculpatory evidence. (Argument I - *Brief in Support of Motion for Relief from Judgment*)

C. Counsel failed to request production and endorsement of res gestae witnesses at trial; failed to file meaningful pre-trial and trial motions. The purpose of a Robinson hearing, is not only to determine the reason for a failure to endorse or a failure to endorse or a failure to produce but also to determine whether the defendant has been prejudiced by non-production of the witnesses. (1) counsel failed to object to the failure to produce and endorse the res gestae witnesses on the information and to produce all res gestae witnesses. MCL 767.40; U.S. Const. Amend V. (Argument III - *Brief in Support of Motion for Relief from Judgment*)

D. Counsel failed to object to the unfair cross-section of the community and failed to raise an equal protection claim. (1) counsel failed to challenge the selection process used in empaneling the Defendant's trial jury, and failed to request the Court for the presence of minority jurors in the venire. (2) counsel's failure to request an instruction on the necessarily included lesser offense constituted deficient performance.  The right to a properly instructed jury is fundamental to the right to receive a fair trial. (Argument IV - *Brief in Support of Motion for Relief from Judgment*)

E. Counsel was ineffective for failing to address the Court about the 3rd habitual felony offender notice "not being timely served," pursuant to MCL 769.13[.] Defendant was prejudiced by a substantial increase in his guidelines sentencing range. Any amount of additional prison time imposed as a result of an attorney's deficient performance has Sixth Amendment significance. (Argument I - *Brief in Support of Motion for relief from Judgment*)

4. Appellate counsel was ineffective for the following reasons:

4

A. Appellate counsel failed to request the necessary Ginther hearing to expand the record for appellate review of Defendant's claim that he was denied the effective assistance of trial counsel (1) appellate counsel failed to request a Robinson hearing to determine the reason for the failure to produce and endorse the res gestae witnesses, and to determine whether the Defendant was prejudiced by non-production of witnesses. (2) appellate counsel failed to request a *Ginther* hearing to address ineffective assistance of trial counsel. (Argument II - *Brief in Support of Motion for Relief from Judgment*)

B. Appellate counsel performed deficiently by failing to raise the issue of nondisclosed evidence; by failing to investigate adequately and secure nondisclosed exculpatory evidence: During trial, testimony was given about X-Ray, CT Scan results and a Doctor's Report that was never disclosed. (T.T., 6/20/17 pg. 202-203). It was unreasonable for appellate counsel to fail to address a Brady violation on direct appeal. (Argument II - *Brief in Support of Motion for Relief from Judgment*)

C. Appellate counsel was ineffective for failing to raise and preserve the issues of: violation of equal protection of the law; defendant's right to a "fair cross-section" of the community; and ineffective assistance of trial counsel. Had appellate counsel investigated and addressed the issues they could have been raised and preserved in a proper post-trial motion or first-tier appeal. Appellate counsel failed to raise the issue of prosecutorial misconduct. (Argument II - *Brief in Support of Motion for Relief from Judgment*)

D. Appellate counsel failed to ensure that Defendant had the necessary trial court record in order to file a meaningful "Standard 4" brief, in a reasonable amount of time, so that Defendant could brief any issues which appellate counsel failed to raise (see, attachment dated 10/23/17)

5. The prosecution violated Defendant's constitutional rights in the following ways:

A. A. Failed to endorse on the information and produce at trial all res gestae witnesses; and failed to disclose exculpatory material/evidence (see, Argument III – *Brief in Support of Motion for Relief from Judgment*)

Motion for relief from judgment (ECF No. 11-8, PageID.582-585) (case citations omitted).

While Oliver's motion referred to his "Brief in support of motion for relief from Judgment", this brief consisted of one paragraph entitled "RELIEF REQUESTED":

> Defendant-Appellant requests that this Honorable Court REVERSE his convictions based upon arguments contained within this Motion for Relief from Judgment; ORDER a new trial; and/or in the alternative, conduct an evidentiary hearing to expand the record for appellate review of ineffective assistance of counsel; habitual offender notice; and newly discovered evidence.

Brief (ECF No. 11-8, PageID.588-589).[1]  Oliver also filed a motion to recuse the trial judge (ECF No. 11-8, PageID.590-593), an "Affidavit in support of evidentiary hearing" (ECF No. 11-8, PageID.594-596), and the "Affidavit of Yolanda Borrego" (ECF No. 11-8, PageID.597-598).

Some months later, on January 13, 2020, Oliver filed a "Motion to amend motion for relief from Judgment" (the "amended MRJ") (ECF No. 11-9), in which he asked the trial judge "to Amend/Supplement the motion filed in October 2019".  Amended MRJ (ECF No. 11-9, PageID.601).[2]  Oliver's supporting brief ("supplemental arguments") for the amended MRJ raised three "questions presented":

> I.  Was defendant-appellant denied the effective assistance of counsel when counsel failed to engage "expert testimony rebutting the state's expert testimony"; and, where counsel failed to become "versed in [the]technical matter," most critical to this case which involved such "substantial contradiction in a given area of expertise?"
>
> II.  Did the district court judge abuse his discretion in finding probable cause to bind defendant over on the charge of unlawful imprisonment; and, was defense counsel ineffective for failing to file a motion to quash the charge of unlawful imprisonment for failing to challenge the bind-over?
>
> III.  Did appellate counsel violate defendant's right to the effective assistance of counsel where; he failed to investigate; he failed to subject the state's case to adversarial testing; he omitted dead-bang winners; he denied defendant counsel at

---

[1] The Court notes that the "Relief Requested" page is numbered 38.  The brief contains no arguments.

[2] *See* MCR 6.502(F), which provides that "[t]he court may permit the defendant to amend or supplement the motion at any time."

a critical stage; and violated defendant's right to equal access to the appellate process?

Questions Presented (ECF No. 11-9, PageID.605).

The trial judge denied the motion to recuse (ECF No. 11-10). In addressing Oliver's amended MRJ the trial judge explained that:

> Defendant filed the current Motion for Relief from Judgment on October 4, 2019, alleging ineffective assistance of trial and appellate counsel for several reasons. He filed a supplemental brief on January 13, 2020, clarifying his previous arguments.

Opinion and Order (ECF No. 11-11, PageID.620) (March 31, 2020). The trial judge identified the clarified arguments as: "Ineffective Assistance of Trial Counsel - Expert"; "Ineffective Assistance of Trial Counsel - Motion to Quash"; and, "Ineffective Assistance of Appellate Counsel". *Id.* at PageID.621-622). The trial judge denied the amended MRJ. *Id.* at PageID.620-627. Oliver did not seek reconsideration of the order.

Next, Oliver filed an application for leave to appeal to the Michigan Court of Appeals raising nine issues (in his words):

> I. Did trial counsel's failure to request the "curriculum vitae" of the expert witness before trial; failure to investigate adequately; failure to secure suitable expert testimony/assistance in the preparation and presentation of his defense; and, wholesale failure to subject the prosecution's case to meaningful adversarial testing deprive defendant-appellant of his Sixth Amendment right to the effective assistance of counsel; a fair trial; equal protection of the law; right to present a defense; and right to confront his accusers?

> II. Was defendant denied effective assistance of counsel by appellate counsel's failure to address: the ineffective assistance of trial counsel; the prosecution's failure to disclose evidence and endorse on the information all known res gestae witnesses; proof of service of 3rd habitual notice; and failure to adequately investigate significant issues on the appeal as of right, which would have required reversal on appeal. Appellate counsel failed to raise numerous meritorious issues and failed to preserve issues for federal review; and, the trial court violated defendant's Sixth Amendment right to counsel?

> III. Did the prosecution fail to endorse and produce at trial all res gestae witnesses; did the prosecutor fail to disclose exculpatory material evidence, which included

7

an emergency room doctor's report, x-ray, CT scan results, and the curriculum vitae of an expert witness; did the prosecution's misconduct and did trial counsel's failure to investigate constructively violate defendant's constitutional right to a fair trial; right to process to obtain witnesses in his favor; right to confront the witnesses against him; right to due process; and, the right to present a defense?

IV.  Was defendant denied equal protection of the law and his Sixth Amendment right to a "fair cross section" of the community, when he was placed on trial by the State of Michigan before an impartial jury, from which members of his race were systematically excluded by the trial court; and was trial counsel ineffective for his failure to object to the unconstitutional racial composition of the jury venire and raise an equal protection claim; and request a necessarily included lesser offense instruction; was appellate counsel ineffective for failing to raise and preserve the issue on direct appeal?

V.  Is defendant entitled to a new trial based upon newly discovered evidence?

VI.  Was defendant-appellant denied the effective assistance of counsel when counsel failed to engage "expert testimony rebutting the state's expert testimony"; and, failed to become "versed in [the] technical matter," most critical to this case which involved such "substantial contradictions in a given area of expertise."  U.S. CONST. AMEND. VI; CONST. 1963, ART 1 § 20?

VII.  Did the district court judge abuse his discretion in finding probable cause to bind defendant over on the charge of unlawful imprisonment; and, was defense counsel ineffective for failing to file a motion to quash the charge of unlawful imprisonment and for failing to challenge the bind-over?

VIII.  Did appellate counsel violate defendant's right to the effective assistance of counsel; fail to investigate; fail to subject the state's case to adversarial testing; omit dead-bang winners; deny defendant counsel at a critical stage; and, violate defendant's right to equal access to the appellate process?

IX.  Did the trial court abuse its discretion and violate defendant's constitutional right to due process and equal protection of the law, by applying an unreasonable application of law and determination of facts, without assessing defendant's claims that he is entitled to a new trial on the grounds of newly discovered evidence; and, did the prosecution's suppression of material and exculpatory evidence in violate *BRADY V MARYLAND*?

Application for leave to appeal (ECF No. 11-13, PageID.827-828).  The appellate court denied the

application "because defendant has failed to establish that the trial court erred in denying the

motion for relief from judgment." *People v. Oliver*, No. 353652 (Mich. App. Sept. 15, 2020) (ECF

No. 11-13, PageID.816).

Finally, Oliver filed an application for leave to appeal to the Michigan Supreme

Court which raised five issues (in his words):

> I. Trial counsel's failure to request "the curriculum vitae" of the expert witness before trial; failure to investigate adequately; failure to secure suitable expert testimony/assistance in the preparation and presentation of his defense; and, wholesale failure to subject the prosecution's case to meaningful adversarial testing by failing to conduct any pretrial investigative interviews of any of the prosecution's witnesses constructively deprived Defendant-Appellant of his Sixth Amendment right to effective assistance of counsel, a fair trial, equal protection of the law, right to present a defense and right to confront his accusers.
>
> II. Defendant was denied effective assistance of counsel by his appellate counsel's failure to address, ineffective assistance of trial counsel; the prosecution's failure to disclose evidence and endorse on the information all known res gestae witnesses; proof of service of 3rd habitual notice, and adequately investigate significant issues on the appeal as of right, which would have required reversal on appeal. Appellate counsel failed to raise numerous meritorious issues and failed to preserve issues for federal review; trial court violated Defendant's Sixth Amendment right to counsel.
>
> III. The prosecution failed to endorse on the information and produce at trial all res gestae witnesses. The prosecution failed to disclose exculpatory material/evidence, which included an emergency room doctor's report, x-ray, CT scans/results, and the curriculum vitae of an expert witness. The prosecution's misconduct and trial counsel's failure to investigate constructively violated defendant-appellant's constitutional right to affair trial, right to process to obtain witnesses in his favor and to confront the witnesses against him and the defendant's right to due process of law, and the right to present a defense.
>
> IV. Was defendant denied equal protection of the law and his Sixth Amendment right to a "fair cross section" of the community, when he was placed on trial by the State of Michigan before an impartial jury, from which member of his race were systematically excluded by the trial court; and was trial counsel ineffective for his failure to object to the unconstitutional racial composition of the jury venire and raise an equal protection claim; and request a necessarily included lesser offense instruction; was appellate counsel ineffective for failing to raise and preserve the issue on direct appeal?
>
> V. Defendant is entitled to a new trial based upon newly discovered evidence.

Application for leave to appeal (ECF No. 11-15, PageID.1017-1028). The Michigan Supreme Court denied the application "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Oliver*, No. 162257 (Mich. March 30, 2021) (ECF No. 11-15, PageID.1016).

### D. Habeas Petition

This matter is now before the Court on Oliver's petition seeking habeas review pursuant to 28 U.S.C. § 2254. *See* Petition (ECF No. 1, PageID.1-43); Motion to amend (ECF No. 4). Oliver has raised eight issues (in his words):

I. Violation of due process, the prosecution failed to introduce sufficient evidence to support all the elements of the charged crime of unlawful imprisonment.

II. The trial court abused it's discretion and violated the petitioners right to due process when it allowed the testimony of an expert witness without the full disclosure of there credentials to qualify them as an expert on strangulation and the prosecution failed to disclose the curriculum vitae of the witness before trial.

III. The trial judge committed constitutional error by using judicial fact finding to score the 50 points under the OV 7 for excessive brutality during the commission of the two convictions and whether the judge exceeded the guidelines on the assault conviction by 30 months without making any findings to support the upward departure.

IV. Ineffective assistance of trial counsel: failure to investigate; failure to secure suitable expert testimony/assistance; failure to subject the states case to meaningful adversarial testing; failure to conduct any pretrial investigative interviews of any witnesses; violated right to a fair trial; right to present a defense; right to confrontation; right to due process and equal protection of the law.

V. Appellate counsel violated defendant's right to the effective assistance of counsel; failed to investigate; omitted dead-bang winners; violated defendant's right to equal access to the appellate process. And trial court violated defendant's right to counsel.

VI. Defendant was denied equal protection of the law and his Sixth Amendment right to a "fair cross section" of the community, when he was placed on trial before an impartial jury, from which members of his race were systematically excluded by the trial court. Trial counsel was ineffective for his failure to object to the unconstitutional racial composition of the jury venire and raise an equal protection

10

claim; and request a necessarily included lesser offense instruction.  Appellate counsel was ineffective for failing to raise and preserve the issue on direct appeal.

VII.  Newly discovered evidence / Actual innocence.

VIII.  The trial court abused its discretion and violated Defendant's constitutional right to due process and equal protection of the law, by applying an unreasonable application of the law and determination of facts, without assessing defendant's claims, that he is entitled to a new trial on the grounds of: Newly discovered evidence; violation of BRADY; and ineffective assistance of both trial and appellate counsel.

 Petition at PageID.9, 12-13, 17-18, 20-21, 29, 31, 34, 35.

A few months after filing the habeas petition, Oliver filed a motion to include a new claim that trial counsel provided ineffective assistance for failing to investigate "the newly discovered evidence witness" [Ms. Borrego].  *See* Motion to amend (ECF No. 4, PageID.151).

Oliver started in pertinent part that,

Petitioner provided trial counsel, months before trial, with the names and contact information of three possible witnesses, who could have possibly provided relevant evidence to help the defense in 2017.  One of these witnesses was Ms. Borrego, who was listed in Petitioner's claim.  Although [sic] Petitioner ask [sic] all three witnesses multiple times before trial, if they had or knew of any helpful information or evidence, and all three witnesses responded, no.  Trial counsel failed, and made no effort to contact witnesses and then determine if whether ot [sic] not the witnessed would testify at trial, and, if so, what would they say?

Motion to amend at PageID.151-152.  The Court granted the motion stating in pertinent part,

Petitioner's proposed amendment is submitted before the filing of a responsive pleading. He may amend his pleading once, as a matter of course, under the court rule. . .  Accordingly, to the extent the Court's approval is necessary, the Court will grant Petitioner's motion to amend the petition. Petitioner need not file an amended pleading. The Court will simply consider the specific argument regarding counsel's failure to investigate the testimony of witness Borrego as part of habeas ground IV, which includes Petitioner's claim that counsel failed to investigate Petitioner's defense generally.

Order (ECF No. 7, PageID.163).[3]

## II.    Standard of review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  In this regard, 28 U.S.C. § 2254 provides that,

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Under this statute, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381-82

---

[3] In granting the motion, the Court stated that "[t]here is little question the issue was exhausted in the state courts." *See* Order at PageID.163. The Court based this ruling on the allegations as set forth in Oliver's petition.  However, for the reasons discussed in this opinion, the state court records establish that this claim was unexhausted.

(2000); *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694.  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity.  *Stermer v. Warren*, 959 F.3d 704, 721 (2020).  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  In addressing a petitioner's habeas claims, "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner "shall

have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *Sumner v. Mata*, 449 U.S. 539, 546-547 (1981).

Finally, § 2254(d) limits the facts a court may consider on habeas review. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "[I]f the petitioner's claim was never adjudicated on the merits by a state court, 28 U.S.C. § 2254(d), AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. "Instead, the petitioner's claim is reviewed *de novo* as it would be on direct appeal." *Id*.

### III.    Discussion

### A.    Issue I (Insufficient evidence to support the convictions)

In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364. "A defendant claiming insufficiency of the evidence bears a heavy burden." *United States v. Johnson*, 71 F.3d 539, 542 (6th Cir. 1995). Sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In evaluating a sufficiency of the evidence claim, the court views both direct evidence and circumstantial evidence in the light most favorable to the prosecution, drawing all available inferences and resolving all issues of credibility in favor of the factfinder's verdict. *United States v. Rayborn*, 495 F.3d 328, 337-38 (6th Cir. 2007). The

14

reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution.  *Wright v. West*, 505 U.S. 277, 296-97 (1992).

Here, the Michigan Court of Appeals rejected Oliver's claim using the appropriate standard of review:

> Defendant first argues that there was insufficient evidence to support his unlawful-imprisonment conviction and that the trial court erred in denying his motion for a directed verdict on this charge. We do not agree.

> The pertinent standards governing review of a motion for a directed verdict and a challenge to the sufficiency of the evidence are the same. *See People v. Chelmicki*, 305 Mich. App. 58, 64; 850 N.W.2d 612 (2014), and *People v. Meissner*, 294 Mich. App. 438, 452; 812 N.W.2d 37 (2011). "When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v. Passage*, 277 Mich. App. 175, 177; 743 N.W.2d 746 (2007). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Id*.

> The unlawful-imprisonment statute, MCL 750.349b(1), provides, in relevant part:

> > (1) A person commits the crime of unlawful imprisonment if he or she knowingly restrains another person under any of the following circumstances:

> > (a) The person is restrained by means of a weapon or dangerous instrument.

> > (b) The restrained person was secretly confined.

> > (c) The person was restrained to facilitate the commission of another felony or to facilitate flight after commission of another felony.

> Defendant argues that evidence presented at trial was not sufficient to support his conviction of unlawful imprisonment because he did not "restrain" Austin and she was "free to leave" during the incident. MCL 750.349b(3)(a) defines the term "restrain" as follows:

> > "Restrain" means to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority.

The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts.

Austin testified that she went to sleep and awoke to defendant yelling at her and kicking her in her ribcage. She stated that she ran toward a door to leave, but that defendant ran after her, moved her hand, and slammed the door shut, stating, "you're not going anywhere, b*tch." She stated that she again tried to unlock the door and that defendant hit her and ordered her to sit in the living room. The crime of unlawful imprisonment can occur when the victim is confined or her movement is restricted for even a moment. *Chelmicki*, 305 Mich. App. at 70. A factfinder could find that defendant forcibly restricted Austin's movements by stopping her from leaving the home, slamming the door shut before she could leave, moving her hand away from the door, hitting her, and ordering her back to the living room.

Austin stated that defendant subsequently forced his penis into her mouth and then choked her. When he let go, she ran for the door and managed to open the door, but defendant slammed it shut. Austin stated that defendant admonished her, punched her to the ground, and again ordered her back to the living room. This is a second instance from which a factfinder could find that defendant forcibly restricted Austin's movements.

Austin stated that while she was standing in the living room, defendant pushed her to the ground and then climbed on top of her and vaginally penetrated her with his penis. Austin again tried to run to the door to leave, but defendant ran to the door and stopped her, stating, "I told you you're not leaving, get the f*ck back in the living room." Austin stated that she asked to leave and that defendant ordered her upstairs. A factfinder could find that defendant forcibly restricted Austin's movements during this sequence of events.

Austin testified that defendant forced her into a bedroom upstairs and onto a bed, where he performed nonconsensual oral sex on her. Austin stated that she attempted to sit up and stop him, but he pushed her down. This is yet another instance from which a factfinder could find that defendant restricted Austin's movements, i.e., by pushing her down. [FN 2]

Defendant alleges that Austin was free to leave during the night, and that he did not restrain, hit, or kick her. We note that the prosecution introduced photographs of Austin that evidenced injuries consistent with the allegations she made that defendant used force against her to restrain her movements. A Sexual Assault Nurse Examiner (S.A.N.E.), Jill Hicks, testified that she observed Austin's injuries after the incident and that they were consistent with strangulation. "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *Passage*, 277 Mich. App. at 177. "All conflicts in the evidence must be resolved in favor of the prosecution." *Id.* Despite defendant's testimony to the contrary, a factfinder could

reasonably have found, on the basis of Austin's testimony and the additional circumstantial evidence, that defendant forcibly restricted Austin's movements without her consent at numerous points during the morning of September 5, 2016.

Defendant argues that his acquittal of CSC-I means that he did not restrain Austin for the purpose of facilitating the commission of another felony. We note, however, that a conviction of the "other" felony is not a condition precedent for a conviction of unlawful imprisonment under the plain language of MCL 750.349b(1)(c), which states in part that a defendant commits unlawful imprisonment when he or she restrains a person to facilitate [FN 3] the commission of another felony. [FN 4] While there was an eventual acquittal [FN 5] regarding CSC-I, the fact remains that there was sufficient evidence presented that defendant restrained Austin to facilitate committing CSC-I.

Austin testified that after defendant restrained her, he commanded her to "suck my d*ck, b*tch." A factfinder could have reasonably found that defendant manifested his felonious purpose for restraining Austin by having her perform oral sex on him after restraining her movements. Austin stated that she attempted to leave again but that defendant stopped her, knocked her to the ground, and vaginally penetrated her with his penis. A factfinder could have used this evidence to find that defendant's purpose in restraining Austin was to commit another criminal sexual assault. Austin testified that she again attempted to leave, but defendant stopped her, ordered her upstairs, and performed oral sex on her, pushing her down when she attempted to get up. This is yet another instance from which a factfinder could find that defendant's motivation in restraining Austin was to make committing sexual assault on Austin easier.

In sum, the prosecutor presented sufficient evidence to support the unlawful-imprisonment conviction.

[FN 2]  Austin testified that defendant subsequently penetrated her vagina again with his penis, while she cried.

[FN 3]  The statute does not define "facilitate." In criminal law, "facilitate" means "[t]o make the commission of (a crime) easier." *Black's Law Dictionary* (10th ed.).

[FN 4]  The jurors were instructed solely on this "other felony" theory of unlawful imprisonment, which is found at MCL 750.349b(1)(c).

[FN 5]  This Court has noted that a jury sometimes will acquit on certain charges out of "lenien[cy] or compromise[ ]." *People v. Davis*, 320 Mich. App. 484, 491; 905 N.W.2d 482 (2017).

*Oliver*, No. 339826, 2018 WL 2324104 at *1-3.

The evidence presented at trial was sufficient for a rational jury to infer, beyond a reasonable doubt, that Oliver committed unlawful imprisonment of the victim. To the extent that Oliver disagrees with the state appellate court's construction of the statutory elements of the crime of unlawful imprisonment, he cannot seek federal habeas relief on that basis. *See Pulley*, 465 U.S. at 41. *See also, Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (the United States Supreme Court "repeatedly has held that the state courts are the ultimate expositors of state law" in federal habeas proceedings). Accordingly, this claim will be denied.

### B.     Issue II (The expert witness)

### 1.     State law claim

In his Standard 4 brief, Oliver presented the question on appeal as:

> Did the Court abuse its discretion when it allowed the testimony of the S.A.N.E. nurse without the full disclosure of her credentials qualifying her as an expert on strangulation?

*See* Standard 4 Brief at PageID.725. Oliver based his argument on the prosecutor's failure to provide a curriculum vitae for the expert witness, Nurse Hicks, as required by MCR 6.201. *Id*. Then, Oliver argued a different issue, stating that while the victim testified that "she went to the emergency room where x-rays, cat scans, and doctor-specific diagnosis were performed", "there were no reports provided to the defense or Court, therefore creating a prejudicial jury to hearsay [sic]". *Id*. Oliver cited *Brady v. Maryland*, 373 U.S. 87 (1963), noted that the prosecutor had a constitutional duty to volunteer exculpatory material to the defense, and eventually concluded that he was entitled to a "new trial or remand for an evidentiary hearing to determine validity [sic] of testimony of prosecution's expert witness." *Id*. at PageID.725-726.

The Michigan Court of Appeals addressed this question presented as raising alleged errors of state law under MCR 6.201 and MRE 702:

Defendant next argues, in a brief filed pursuant to Michigan Supreme Court Administrative Order 2004-6, Standard 4, that [Nurse] Hicks should not have been qualified as an expert in strangulation because she did not possess sufficient medical qualifications. Defendant also contends that the prosecution violated MCR 6.201 by not providing him with an expert-witness curriculum vitae (CV) to establish that Hicks had a "sufficient training background in strangulation" before trial.

Appellate courts review for an abuse of discretion a trial court's decision to admit or exclude expert testimony. *Edry v. Adelman*, 486 Mich. 634, 639; 786 N.W.2d 567 (2010). This Court also reviews for an abuse of discretion a trial court's decision regarding an expert's qualifications. *People v. Steele*, 283 Mich. App. 472, 480; 769 N.W.2d 256 (2009). A trial court abuses its discretion when it "chooses an outcome falling outside [the] principled range of outcomes." *People v. Babcock*, 469 Mich. 247, 269; 666 N.W.2d 231 (2003).

*Oliver*, No. 339826, 2018 WL 2324104 at *3-4.

The appellate court noted that "MRE 702 provides that an expert may be qualified 'by knowledge, skill, experience, training, or education[.]' " *Id*. at *4.  In this case,

The attorneys conducted extensive examinations concerning Hicks's qualifications. Hicks testified that she worked as a S.A.N.E. for the Sparrow Hospital Health System in Lansing. She testified that a S.A.N.E. is a "specialized nurse that is trained . . . to take care of a sexual assault victim that presents to the hospital." Hicks testified that during the course of her job, she conducts a sexual-assault-specific medical examination of the alleged victim, assists with evidence collection, and takes care of the victim's medical needs. Hicks testified that she held a S.A.N.E. certification, which required her to be a fully licensed nurse and to complete an additional 40 hours of adult training, an additional 40 hours of pediatric training, and a six-month orientation period with an experienced nurse examiner. Hicks testified that she had been a S.A.N.E. for 2 1//2 [sic] years and had conducted approximately 238 examinations during that time. She stated that she had also been through additional specialized training with sexual-assault victims and additional training regarding strangulation.

*Id*.

The appellate court concluded that the trial court did not abuse its discretion with respect to allowing Nurse Hicks to give expert testimony:

Hicks was qualified to provide expert testimony related to the mechanics of strangulation in light of her testimony regarding her experience, knowledge, and training in the area of nursing, and her specialized training in strangulation. Further,

19

she testified within the limitations of her experience, knowledge, and training. Hicks described the injuries to Austin's neck by noting abrasions and petechiae. Hicks stated that the abrasions and petechiae were consistent with strangulation. Before making these statements, Hicks described her training and experience in identifying marks consistent with strangulation and laid a proper foundation for her testimony that she believed Austin's marks were consistent with markers of strangulation she studied and had previously seen. Contrary to defendant's assertion, Hicks did not testify that Austin was choked, but that the physical injuries she suffered were consistent with the act of strangulation. MRE 702. Therefore, the trial court did not abuse its discretion by allowing Hicks to be qualified as an expert in recognizing marks consistent with strangulation or by admitting her testimony.

*Id*. at *5.

The appellate court also concluded that the trial court did not abuse its discretion

with respect to MCR 6.201:

Defendant also argues that the prosecutor did not comply with MCR 6.201 because he did not provide defendant with Hicks's CV before trial. MCR 6.201(3) provides in pertinent part that in addition to other disclosures required by law, a party upon request must provide to all other parties "the curriculum vitae of an expert the party may call at trial and either a report by the expert or a written description of the substance of the proposed testimony of the expert, the expert's opinion, and the underlying basis of that opinion[.]"  However, the record does not show that defendant ever requested Hicks's CV. [FN 6]  In addition, the record indicates that Hicks's CV and S.A.N.E. report were both introduced into evidence, and defense counsel participated in the voir dire examination of Hicks. Given all the circumstances, we find no basis for reversal with regard to the trial court's admission of Hicks's testimony. [FN 7]

*Id*.

[FN 6]  We note that Hicks was listed as a witness on the information filed against defendant.

[FN 7]  Defendant appears to be arguing that an error requiring reversal occurred because Hicks testified about additional training beyond that listed on her CV. Defendant provides inadequate support for such an argument.

In summary, Oliver's claim regarding Nurse Hicks as an expert witness under MRE

702 and the prosecutor's handling of her CV under MCR 6.201 are state law claims which are not

cognizable on federal habeas review. "[I]t is not the province of a federal habeas court to reexamine

state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Accordingly, this claim will be denied.

### 2. Due process claims

Oliver's habeas petition characterizes these two state evidentiary claims as federal due process claims, *i.e.*, the trial court violated his due process rights when it allowed Nurse Hicks to testify as an expert witness without the full disclosure of her credentials to qualify her as an expert on strangulation, and, the prosecution failed to disclose the CV of the witness before trial. *See* Petition at PageID.12-13. For the reasons discussed below, these claims are unexhausted, procedurally barred, and not subject to habeas review.

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "It is the petitioner's burden to show exhaustion." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). "To be properly exhausted, each claim must have been 'fairly presented' to the state courts. *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009). "This includes a requirement that the applicant present the issue both to the state court of appeals and the state supreme court." *Id*. "A claim may only be considered 'fairly presented' if the petitioner asserted both the factual and legal basis for his claim to the state courts." *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). A habeas petition containing unexhausted claims should be dismissed without prejudice to allow the petitioner to present his claims to the state courts. *See Rose v. Lundy*, 455 U.S. 509, 518-20 (1982).

Oliver did not exhaust these federal claims in the state court. His citation to *Brady* and suggestion of a possible *Brady* violation in his Standard 4 Brief did not fairly present this federal claim to the Michigan Court of Appeals. *See People v. Mackle*, 241 Mich. App. 583, 604

fn. 4, 617 N.W.2d 339 (2000) (explaining that an issue is waived if it is not raised in the statement of questions presented). In this regard, Oliver first raised a *Brady* claim as part of Issue IX in his application for leave to appeal the order denying the amended MRJ.  *See* PageID.828.

There is no basis for Oliver to return to state court to exhaust these due process claims.  He has filed his direct appeal and his MRJ.  *See* Opinion and Order (ECF No. 11-11); *Jackson v. McKee*, No. 1:13-cv-464, 2013 WL 2431878 at *4 (W.D. Mich. June 4, 2013) (MCR 6.502(G)(1) allows one motion for relief from judgment to be filed after August 1, 1995).  Because no further state remedy is available, exhaustion is no longer required, but the claims are procedurally defaulted.  *See Rust*, 17 F.3d at 160 ("If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts.").

Habeas review of a procedurally defaulted claim is precluded unless the petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or, that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Ineffective assistance of appellate counsel can serve as cause to excuse a procedural default,  but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment. *Id.*; *Chase v. MaCauley*, 971 F.3d 582, 591-92 (6th Cir. 2020).  As discussed in § IV.D., *infra.*, Oliver has not shown that his appellate counsel provided ineffective assistance.

22

Oliver's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  In *Schlup v. Delo*, 513 U.S. 298 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

*Schlup*, 513 U.S. at 321. To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329.  In the procedural default context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998). "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324.

Here, Oliver seeks to excuse the procedural default through the "actual innocence" exception.  *See* Oliver's Reply at PageID.1135-1136 (stating in part, "Oliver has summited [sic] affidavits from an expert in strangulation and a trustworthy eyewitness account, in his Habeas application to support his actual innocence claim and several constitutional violations.").  The Court will address these affidavits chronologically.

First, Oliver presented "new evidence" in the form of the Affidavit of Yolando Borrego (ECF No. 1-4, PageID.72).  Oliver addressed this evidence as follows:

The [petitioner] testified at trial that, "the alleged victim left the house between 12:15 a.m. - 12:30 a.m. September 5, 2016, and then he went to sleep and that no assault took place.  (T.T., 6/20/17, pg. 172).

The newly discovered evidence in this case includes an affidavit of a witness who reveals the actual whereabouts of the alleged victim in this case, on the date and time in question.  As well as a possible causation of the alleged injuries and marks.  The Defendant could not within reasonable diligence have produced at trial this undisclosed evidence, given the fact that Defendant was not made aware of this evidence until November 2018.  This newly discovered evidence is sufficient to render a different result on retrial and prove Defendant's "actual innocence."  In light of the new evidence, no juror, acting reasonably would have voted to find the Defendant guilty beyond a reasonable doubt (see attached Affidavit).

Petition at PageID.35.

Ms. Borrego signed this affidavit on September 20, 2019, more than three years after Oliver's committed the crimes.  Ms. Borrego did not witness Oliver's criminal conduct.  Rather, her affidavit discussed some interactions with the victim (Ashley Austin) on the morning of the crime:

1. On September 5, 2016 about 12:45-1:00 a.m., Ashley Austin came to my apartment and wanted me to go with her to Jamar Oliver's house and confront him as he had just put her out after an argument;

2. I declined and invited her in to sober up;

3. We sat and talked about her day/evening and looked someone up on Facebook;

4. After a few hours, I was ready for bed and offered to meet with her the next day;

5. She again wanted me to go with her to Jamar's place, I again declined;

6. The next thing I know, Ashley is pulling my hair and attacking me;

7. I grabbed her by the neck, pushed he [sic] off of me and told her to leave or I was calling the police;

8. Ashley left my house about 3:00-3:15 a.m., and I went to sleep[.]

Borrego Aff. at PageID.72.  Ms. Borrego further stated that, "I never informed Jamar Oliver's trial attorney or Mr. Oliver of these facts until November 2018."  *Id.* at PageID.73.

24

Ms. Borrego's affidavit is not new evidence sufficient to establish actual innocence and excuse the procedural default.   Ms. Borrego signed the affidavit more than three years after Oliver committed the crimes, months after the state courts affirmed the convictions, and to present as new evidence in support of Oliver's original MRJ.  *See* MRJ (ECF No. 11-8, PageID.597-598).

"In the new trial context, motions based solely upon affidavits are disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations." *Herrera v. Collins*, 506 U.S. 390, 417 (1993). Here, the affidavit presents a skeletal timeline of events which requires additional explanation. Ms. Borrego stated that the victim simply appeared at her apartment between 12:45 and 1:00 in the morning to discuss her relationship with Oliver.  This impromptu visit indicates that Ms. Borrego was acquainted with the victim and knew something about the victim's relationship with Oliver.  However, the affiant does not explain her own relationship with either the victim or Oliver. The affiant suggests that the victim had been drinking and needed to "sober up," but provides no further discussion of the victim's condition.  Then, the affiant provides a rather cryptic account of events which occurred until about 3:15 in the morning, when the victim inexplicably attacked her. Finally, the affiant does not explain why she waited to come forward until long after Oliver's trial, even though she appeared to be acquainted with the victim and aware of the victim's relationship with Oliver. Furthermore, the document presented is a combination of a declaration which was not made under penalty of perjury, and a sworn statement in which the facts were not affirmatively stated, but presented as "true, accurate and to the best of my knowledge and memory" (*i.e.*, the affiant's recollections made three years after the relevant events). In sum, Ms. Borrego's Affidavit is the type of statement which raises more questions than answers, and would benefit from cross-examination and an opportunity to make credibility determinations. *See Herrera*, 506 U.S. at 417.

25

For all of these reasons, this affidavit does not satisfy the *Schlup* standard as new reliable evidence of actual innocence and does not excuse any of Oliver's procedural default.

Second, Oliver presented the "Affidavit of Beverly Sainz, PA" dated January 10, 2020 (ECF No. 1-2) as additional "new evidence".  In this affidavit, PA Sainz provided some opinions regarding petechiae, a hickey, and "one-handed strangulation" stating as follows:

> 1. I am a citizen of full age and majority and if called to testify to any fact contained herein, I am competent to do so.
>
> 2. The most common cause of petechiae is through physical trauma such as a hard bout of coughing, holding breath, vomiting, or crying, which can result in facial petechiae, especially around the eyes;
>
> 3. Petechiae may also occur when excessive pressure is applied to tissue;
>
> 4. Petechiae can also be caused by certain medications and non-infectious conditions. *i.e.*, sunburn, childbirth, weightlifting, thrombocytopenia;
>
> 5. With a one-handed strangulation, petechiae could appear in all areas that any fingers or thumb came into contact with the tissues, depending on the amount of pressure, but it would appear above or below the area;
>
> 6. With a hickey, sucking is sufficient to burst small superficial blood vessels under the skin;
>
> 7. Per vertebral means: all the soft tissue, muscle, skin, which is in front of the bones in the neck;
>
> 8. Cat Scans will detect lumps, swelling without fractures or ligament injuries. If there was swelling there from trauma, it could be seen on a CT scan or MRI;

PA Sainz Aff.  at PageID.58.

While the amended MRJ contains excerpts from the affidavit to contest the prosecution's expert witness[4], the affidavit was not attached to the motion.  *See* ECF No. 11-9.  In

---

[4] Oliver included the following comparison:

PROSECUTION WITNESS: Normal would be strangulation when you see the petechiae on the neck. (T.T., 6/22/17, pg. 48)

denying Oliver's amended MRJ, the trial judge characterized the excerpts from PA Sainz's affidavit as "two cherry picked statements" which did not demonstrate that defense counsel failed to pursue a reasonable trial strategy in not calling its rebuttal witness.  PageID.624.  In this regard, the trial judge found defense counsel's action "clearly a reasonable trial strategy" which "proved fairly effective in that Defendant was acquitted of the four top counts in this matter."  *Id*.  In summary, Oliver's presentation of PA Sainz's affidavit discussing strangulation is not new reliable evidence of actual innocence and does not excuse his procedural default.

> For all of these reasons, the two due process claims related to the prosecution's expert witness are unexhausted, procedurally barred, and not subject to habeas review.

### C.      Issue III (Sentencing)

### 1.      State law claim

> In his state court appeal, Oliver addressed this sentencing error as an abuse of discretion by the trial court.  The Michigan Court of Appeals identified this issue as follows:

>> Finally, defendant challenges his sentence for assault by strangulation, arguing that 50 points should not have been assessed for offense variable (OV) 7 on the basis of sadism. We disagree and conclude that a preponderance of the

---

BEYERL Y SAINZ, PA: The most common cause of petchiae [sic] is through physical trauma such as a hard bout of coughing, holding breath, vomiting, or crying, which can result in facial petechiae, especially around the eyes. Petechiae may also occur when excessive pressure is applied to tissue and can also be caused by certain medication and non-infectious conditions, such as sunburn, childbirth, and weight lifting.

* * *

PROSECUTION WITNESS: With [the] petechiae where it's present, it appears as a one-handed strangulation, pressure from the thumb is what usually cause[s] that area of petechiae. (T.T., 6/22/17, pg. 48)

BEYERLY SAINZ: With a one-handed strangulation, petechiae could appear in all areas that any fingers or thumb came into contact depending on the amount of pressure, but peteciae [sic] will not appear on the area held, but rather above or below that area.

Oliver Brief (ECF No. 11-9, PageID.607) (the second quote attributed to the prosecution's witness appears on page 49 of the trial transcript at PageID.504).

evidence presented at trial supported the trial court's assessment of 50 points for OV 7.

*Oliver*, No. 339826, 2018 WL 2324104 at *5.

Under MCL 777.37(1)(a), OV 7 is to be assessed at 50 points if "[a] victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(3) defines "sadism" as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification."

*Id*. at *6.

The appellate court affirmed the trial court's scoring of the sentence,

In this case, Austin testified that while her liberty and movement were restricted by defendant, defendant called her derogatory names; yelled at her; punched her; scratched her; pushed her down; ordered her to go to different parts of the home; tore off her shirt, bra, and pants; and sexually assaulted her *four* times [FN 8] during the course of the prolonged incident. In addition, Austin testified that at one point, her nose was bleeding, and that defendant choked her "to the point that [she] couldn't breathe." She stated, "I thought he was going to kill me." In light of all the evidence, we find no basis for reversal with respect to the scoring of OV 7.

[FN 8]  While it is true that the jury did not convict defendant of CSC-I, it was the trial court's role to score the variables, and the court was only required to determine if a preponderance of the evidence supported the facts needed to assess 50 points under OV 7. [*People v. Calloway*, 500 Mich. 180, 184 (2017).]

*Id*.

This alleged sentencing error is a state law claim which is not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67-68. *See also, Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (an alleged violation of state law with respect to sentencing is not subject to federal habeas relief, observing that "[a] sentence within the statutory maximum set by statute generally does not

constitute cruel and unusual punishment") (internal quotation marks omitted).  Accordingly, this habeas claim is denied as not cognizable on habeas review.

### 2.      New federal claim

In his habeas petition, Oliver appears to raise a new claim or argument that the trial judge engaged in unconstitutional fact finding at sentencing.  Oliver does not cite *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), but quotes language from that decision:

> [I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.  It is equally clear that such facts must be established by proof beyond a reasonable doubt.

*See* Petition at PageID.18.   Oliver did not raise this federal constitutional claim in the state court. For the reasons discussed in § III.B.2., this claim is unexhausted, procedurally barred, and not subject to habeas review.

### D.      Ineffective assistance of trial counsel (Issue IV)

Oliver first raised this Sixth Amendment claim in his amended MRJ.  The trial judge summarized his claim as follows:

> *A. Ineffective Assistance of Trial Counsel—Expert*
>
> As trial counsel was well aware before trial, the prosecution's theory of the case, that the "marks were caused by strangulation and hickey," and that Defendant intentionally caused the unwitnessed injuries, were to be proven by expert testimony. Counsel had no indication that the S.A.N.E. nurse would be called as an expert in strangulation, nor was he prepared to combat her opinion or expert testimony on injuries or marks. Counsel failed to consult an expert who could meaningfully assist him in advancing his theory of defense and in countering the prosecution's theory of guilt. But for counsel's deficient performance, there is a reasonable probability that the outcome of Defendant's trial would have been different.

Opinion and Order at PageID.620-621.

The trial judge determined that this claim was raised in the prior appeal and "repackaged" in the amended MRJ as an ineffective assistance of counsel claim:

> Defendant argued to the Court of Appeals in his *Appeal by Right*, that the S.A.N.E. nurse, Ms. Hicks, should not have been qualified as an expert. The Court of Appeals concluded that "she testified within the limitations of her experience, knowledge, and training." Also, that "[c]ontrary to defendant's assertion, Hicks did not testify that Austin was choked, but that the physical injuries she suffered were consistent with the act of strangulation." Defendant has now re-packaged his prior argument as an ineffective assistance of counsel claim.
>
> Michigan law states that: "To establish ineffective assistance of counsel, defendant must first show that (1) his trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Uphaus*, 278 Mich App 174, 185 (2008). Defendant claims that his trial counsel was ineffective for failing to call an expert for the defense and being unprepared for Ms. Hicks to testify as an expert. However, the record reflects that trial counsel had another medical professional evaluate the S.A.N.E. report, and then chose not to call her as a witness. This was clearly a reasonable trial strategy decision, in light of the significant possibility that the testimony would have been a net negative to the defense, despite Defendant's two cherry picked statements. If [sic] fact, his trial counsel's strategy proved fairly effective in that Defendant was acquitted of the four top counts in this matter. Defendant also fails to recognize that the testimony of Ms. Austin constitutes evidence that the jury found at least partly credible. It was possible for him to be convicted even without the testimony of Ms. Hicks. Defendant has not presented this Court with any retroactive change in the law that undermines the Court of Appeals' decision regarding the testimony of Ms. Hicks, therefore, this Court cannot address the merits of Defendant's argument, pursuant to MCR 6.508(D)(2).

Opinion and Order at PageID.623-624.

The trial judge's opinion is not entirely clear. It appears that the trial judge both addressed the merits of the ineffective assistance of counsel claim (finding that trial counsel engaged in "a reasonable trial strategy") and also found that she could not address the merits of the ineffective assistance of counsel claim because the Michigan Court of Appeals had ruled on the matter (citing MCR 6.508(D)(2)).[5] Assuming that the appellate court addressed this issue,

---

[5] MCR 6.508(D)(2) provides that:

MCR 6.508(D)(2) does not present a procedural bar to considering this claim in a federal habeas proceeding. *See Valentin v. Tanner*, No. 23-1207, 2023 WL 5748143 at *4 (6th Cir. Sept. 1, 2023) ("Rule 6.508(D)(2) is a rule of collateral estoppel that will not procedurally default a federal habeas claim."). *See also Peoples v. Lafler*, 734 F.3d 503, 512 (6th Cir. 2013) ("When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review.").

Given this record, the Court will address the merits of Oliver's claim that his trial counsel failed to consult an expert to advance his defense and counter Nurse Hicks' expert testimony.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction.  First, the defendant must show that counsel's performance was deficient.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  With respect to the first prong, counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003), citing *Strickland*.  "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential', and when the two apply in tandem, review is 'doubly' so[.]" *Harrington*, 562 U.S. at 105 (internal citations omitted).  "When  § 2254(d)  applies,  the  question  is  not  whether  counsel's  actions  were

---

"The court may not grant relief to the defendant if the motion . . .(2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision[.]"

reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Second, the defendant must show that counsel's deficient performance prejudiced the defense, *i.e.*, "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. The appropriate test is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

"Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700.

With respect to the first prong, Oliver's counsel was not deficient. The trial judge noted that while Oliver's counsel consulted with an expert regarding the S.A.N.E. report. The decision not to call this expert witness was a matter of trial strategy. As the trial judge observed, this was a reasonable trial strategy which proved fairly effective and resulted in the jury acquitting Oliver of the four more serious charges of CSC-I. Oliver has not overcome the presumption the counsel's action "might be considered sound trial strategy." *See Strickland*, 466 U.S. at 689 (internal quotation marks omitted). In short, Oliver has failed to demonstrate that his trial counsel's performance was deficient. Accordingly, this claim is denied.

Finally, Oliver's other claims for ineffective assistance of trial counsel set out in Issue IV (including his amended claim) were not raised on either his direct appeal or in his amended MRJ. For the reasons discussed in § III.B.2, these claims are unexhausted, procedurally barred and not subject to habeas review.

E.     **Ineffective assistance of appellate counsel (Issue V)**

Oliver also claims that his appellate counsel provided ineffective assistance.  The

trial judge identified Oliver's claim for ineffective assistance of appellate counsel set forth in the

amended MRJ as follows:

> *C. Ineffective Assistance of Appellate Counsel*
>
> Defendant was denied counsel at a critical stage when appellate counsel
> failed to investigate and subject the State's case to adversarial testing. If counsel
> had read the trial transcripts, he would have been able to identify obvious
> constitutional violations and dead-bang winners from the trial record. Counsel's
> failure to obtain undisclosed medical records, investigate and question the E. R.
> doctor, and use the undisclosed records to contradict expert testimony was
> objectively unreasonable. Appellate counsel also failed to raise the issue of the
> prosecutor failing to disclose exculpatory evidence which included an emergency
> room doctor's report, x-ray, CAT scan results, and impeachment evidence. Due
> process requires disclosure of evidence that may lead a jury to entertain a
> reasonable doubt about a defendant's guilt. *Giglio v United States*, 405 US 150
> (1972). The error left the defense without the opportunity to "scientifically
> evaluate" and examine the x-ray and CAT scan results for inconsistencies, or the
> E.R. doctor's report to "intelligently" cross-examine the prosecution's expert
> witness.

Opinion and Order at PageID.621-622.

The trial judge addressed the claims as follows:

> Defendant is now asserting that his appellate counsel was ineffective for
> failing to raise several meritless issues. Defendant argues that appellate counsel
> failed to demand medical records of Ms. Austin, investigate, and/or subject the
> State's case to adversarial testing. However, that is the primary job of trial counsel.
> Appellate counsel made arguable legal arguments based on the record that had
> already been created in this matter. Defendant also appears to fail to understand that
> not all medical records are discoverable in a criminal case. His trial counsel
> received all relevant medical records regarding Ms. Austin, such as the S.A.N.E.
> report. Defendant also filed his own Section 4 brief with his Appeal by Right,
> wherein he raised many of the same issues about the S.A.N.E. nurse and lack of
> discovery, all of which were denied by the Court of Appeals.
>
> An "appellate counsel's failure to raise every conceivable issue does not
> constitute ineffective assistance of counsel." *People v Reed*, 198 Mich App 639,
> 646 (1993). Failure to raise a meritless argument does not constitute ineffective
> assistance of counsel. *People v Snider*, 239 Mich App 393, 425 (2000). Defendant

has failed to show that either of his attorney's performance fell below an objective standard of reasonableness. Defendant has also failed to demonstrate that but for the alleged errors, the results of the proceedings would have likely been different.

*Id*. at PageID.626.

With respect to the first prong of the *Strickland* analysis, it is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes*, 463 U.S. 745 (1983). "[I]t is not deficient performance to leave some colorable issues out; indeed, it may even be the best type of performance." *Jones v. Bell*, 801 F.3d 556, 562 (6th Cir. 2015).

Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.

*Jones*, 463 U.S. at 751-52.   It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones."  *Id*. at 752, quoting R. Stern, Appellate Practice in the United States 266 (1981).  "[I]f you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention."  *Id*.  The strategic and tactical choices to determine which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.1990).

Oliver contends that appellate counsel: failed to obtain medical records; failed to investigate the facts of the case; and, failed to subject the State's case to adversarial testing. Oliver's contentions conflate the roles of trial counsel and appellate counsel. The trial judge used the appropriate legal standard and pointed out the different roles of trial counsel and appellate counsel.  Oliver's counsel cannot be ineffective for failing to raise these confusing arguments

which are without merit.  *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial").

In addition, trial counsel persuaded the jury to acquit Oliver of the four most serious counts of CSC-I.  Based on this record, appellate counsel was faced with the challenge of appealing the remaining two convictions and sentences in light of the four acquittals.  Appellate counsel's brief presented reasonable arguments to address the convictions and sentences. Oliver has not overcome the presumption that counsel's action might be considered a sound strategy on appeal. *See Strickland*, 466 U.S. at 689.   In short, Oliver has failed to demonstrate that his appellate counsel's performance was deficient.  Accordingly, this claim is denied.

### F.      Objection to jury (Issue VI)

In this issue, Oliver contends that his constitutional right to equal protection of the law and his right to a fair cross section of the community because members of his race were substantially underrepresented.  Petition at PageID.31.  Oliver did not fairly present his jury claims to the state court, having first raised these claims in his application for leave to appeal the trial court's denial of his amended MRJ.  *See* Issue IV at PageID.827.  For the reasons discussed in § III.B.2., these claims are unexhausted, procedurally barred and not subject to federal habeas review.

### G.      Newly discovered evidence / Actual Innocence (Issue VII)

Oliver contends that newly discovered evidence (*i.e.*, the affidavits of Ms. Borrego and PA Sainz) establishes that he is actually innocent of the crimes for which he was convicted. Oliver's claim is without merit.  "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  *Herrera*, 506 U.S.

at 400.  There is no independent constitutional violation in this case.  Accordingly, this habeas

claim is denied.

### H. Trial court abused discretion (Issue VIII)

In his final issue, Oliver appears to claim that the trial judge violated his due process

by mischaracterizing his amended MRJ, "cherry picking" issues, and failing to address other

issues.  *See* Petition at PageID.35-36.  Oliver did not fairly present this claim to the state court.  As

discussed, after Oliver filed the original MRJ, he filed the motion to amend the MRJ, and the trial

judge addressed the issues raised in the amended MRJ.[6]  For the reasons discussed in § III.B.2,

this claim is unexhausted, procedurally barred and not subject to habeas review.

### IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of

appealability should be granted. A certificate should issue if the petitioner has demonstrated a

"substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of

a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the

district court must "engage in a reasoned assessment of each claim" to determine whether a

certificate is warranted.  *Id*.  Each issue must be considered under the standards set forth by the

Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *See Murphy*, 263 F.3d at 467.

Consequently, this Court has examined each of Oliver's claims under the *Slack* standard. To

warrant a grant of the certificate under *Slack*, 529 U.S. at 484, "[t]he petitioner must demonstrate

that reasonable jurists would find the district court's assessment of the constitutional claims

---

[6] In addition, the Court notes that Oliver did not raise a "cherry picking" claim in either his application for leave to appeal to the Michigan Court of Appeals or his application for leave to appeal to the Michigan Supreme Court.  *See* Applications for leave to appeal (ECF No. 11-13, PageID.827-828) and (ECF No. 11-15, PageID.1017-1029).

debatable or wrong." *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.*

Here, the Court finds that reasonable jurists could not conclude that its dismissal of Oliver's claims was debatable or wrong. Therefore, the Court will deny Oliver a certificate of appealability.  Finally, although Oliver has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue he might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## V.      Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated: September 11, 2024                           /s/ Jane M. Beckering
                                                     JANE M. BECKERING
                                                     United States District Judge